# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| **AMERICAN MOTORIST INSURANCE COMPANY,** | : | |
| | : | **Case no. 1:05cv2331** |
| | : | |
| **Plaintiff,** | : | |
| | : | **JUDGE KATHLEEN O'MALLEY** |
| **v.** | : | |
| | : | |
| **CUSTOM RUBBER EXTRUSIONS, INC., et. al.,** | : | <u>**OPINION & ORDER**</u> |
| | : | |
| | : | |
| **Defendants.** | : | |

Before the Court is a *Motion to Dismiss of Defendants Custom Rubber Extrusions, Inc. and Bidco Sealants, Inc.* ("Motion to Dismiss") (Doc. 15) filed by Defendants Custom Rubber Extrusions, Inc. and Bidco Sealants, Inc. (collectively, "Custom"). Custom asks the Court to dismiss a complaint for a Declaratory Judgment ("Complaint") filed by Plaintiff American Motorist Insurance Company ("AMICO"). AMICO has filed a Response in Opposition ("Response") (Doc. 17), and Custom has filed a Reply ("Reply") (Doc. 19). Accordingly, this matter is ripe for adjudication. For the reasons articulated below, Custom's motion is **GRANTED**.

## I.      BACKGROUND

According to AMICO's Complaint, Custom is a manufacturer of rubber gaskets and other products. AMICO insured Custom for the period of March 15, 2000 to April 2, 2001, under policy

number 3MG603303-00 (the "AMICO Policy"), with policy limits of $1,000,000 per occurrence/$2,000,000 general aggregate. Under the AMICO Policy, Custom was insured for Bodily Injury and Property Damage caused by an "occurrence" that takes place in the "coverage territory" and during the policy period, with certain exclusions. The AMICO Policy also included a requirement that the insured must "[c]ooperate with [AMICO] in the investigation or settlement of the claim or defense against the 'suit . . .'" (Doc. 1, ¶ 28.)

According to AMICO's Complaint, during the period of approximately January 2001 through May 2001, Custom sold 30-inch rubber gaskets to Advanced Drainage Systems, Inc. ("ADS"), a designer and installer of drainage and irrigation systems. ADS subsequently installed these gaskets on polyethylene pipe that was used in three irrigation projects. Leakage occurred after the pipe's installation, and the source of the leakage was traced to Custom's rubber gaskets. On August 28, 2002, ADS brought an action against Custom in the Court of Common Pleas in Franklin County, Ohio (the "Underlying Litigation"). On January 10, 2005, the trial court entered an order against Custom, finding Custom liable to ADS for "the amount of $482,891.26, less the costs related to [certain repair actions taken]." (Doc. 1, Ex. B.) The precise amount to be awarded was to be determined at a later date by a magistrate judge.

During the course of the Underlying Litigation, AMICO provided a full defense for Custom, which, according to AMICO, was under a full reservation of rights. AMICO attached to the Complaint two letters purporting to reserve AMICO's rights, dated November 6, 2004 (Doc. 1, Ex. C) and May 11, 2005 (Doc. 1, Ex. F), sent to Custom by Broadspire Services Inc., which handled

2

the claim for AMICO.[1]  The November 6, 2004 letter explained that some claims at issue in the Underlying Litigation were not covered by AMICO's Policy, but that some claims "may" be covered.

That letter also included the following language:

> AMICO's potential indemnity obligation relates only to damages awarded as to the covered causes of action and, even then, only for ensuing and covered "property damage."  AMICO will also not be responsible for any attorney's fees and costs awarded to plaintiff as such an award does not qualify as damages under the AMICO policy.  Therefore, Custom, not AMICO, will be responsible for satisfying any judgment or settlement awarded for the uncovered causes of action and damages.

*     *     *     *

> This will reiterate that American Motorists Insurance Company (AMICO) reserves its rights to seek reimbursement from Custom for any settlement monies AMICO pays in settlement of uncovered claims and for defense cost incurred defending uncovered claims or damages . . . .

(Doc. 1, Ex. C) (emphasis added).

According to the Complaint, AMICO claims that it again reserved its rights in another letter, dated May 11, 2005, some months after the court ruled against Custom in the underlying action, but before the final judgment had been entered. (Doc. 1, Ex. F.)   In this letter, AMICO first states that it had requested information from Custom in an attorney letter dated December 17, 2005,[2] and repeats the request for specific, itemized information regarding the claims and a copy of the trial transcript.  It also states that "AMICO has provided you with a defense in the above-referenced action and will continue to do so pending completion of its investigation."  Again, AMICO also

---

[1]  The November 6, 2004 letter references a prior reservation of rights letter regarding the same matter dated November 30, 2002.  The November 30, 2002 letter has not been submitted to the Court.

[2]  The contents of the December 17, 2005 letter are unknown as it has not been submitted to the Court.

3

included a reservation of rights statement in the May 11, 2005 letter, as follows:

> As a result of the policy provisions discussed herein, which may be applicable to these claims, as well as any other provisions not specifically mentioned herein which may become applicable as our investigation continues, AMICO hereby asserts its <u>full and complete reservation of rights concerning these claims.  Nothing contained herein, nor any further actions taken by AMICO, should be construed as a waiver of any rights or defenses, whether or not stated herein, which AMICO may possess under its policies and applicable law.  It should be understood that any actions taken by AMICO, its agents, representatives or attorneys do not constitute and are not intended as a waiver of any rights or defenses available to AMICO whether or not stated herein, that may be available now or at any point in time, including withdrawal of the defense and/or the filing of a declaratory judgment action . . . .</u>

(Doc. 1, Ex. F) (emphasis added).  On May 24, 2005,[3] final judgment was entered against Custom in the Underlying Litigation for $482,289.26.

At the point when the final judgment was entered against Custom, AMICO had several courses of action it could have pursued, either separately or, in some instances, simultaneously.  It could have (1) filed an appeal from the judgment on behalf of Custom; (2) filed a declaratory judgment action against Custom seeking a declaration that some or all of the underlying claims against Custom were not covered by the Policy; (3) refused to pay the judgment (if it had a good faith basis to do so) and defend against either a declaratory judgment action by Custom or a direct action by the plaintiff in the underlying litigation (ADS), which ADS could have brought directly against AMICO pursuant to O.R.C § 3929.06, Ohio's direct action statute; or (4) negotiated an agreement

---

[3] There is a discrepancy in the parties' filings as to when the actual award was ordered. AMICO's Complaint alleges that a judgment was entered on July 24, 2005. However, Custom reports in its Motion to Dismiss that the Receipt and Satisfaction of Judgment includes language that the judgment was entered on May 24, 2005, is dated June 17, 2005, and time-stamped June 27, 2005. (Doc. 15, p. 5 n. 3).  In addition, it appears that the judgment was paid on June 17, 2005, so that it would be illogical that judgment was not entered until July 24, 2005, one month <u>after</u> it was paid.

4

with Custom that would govern payment of the judgment.  If AMICO was concerned that interest would accrue on the judgment while it pursued one of the above courses of action, moreover, it could have sought to stay the judgment.  Rather than pursue any of those courses of action, however, AMICO paid the judgment in full on June 17, 2005, before the thirty-day period for filing a notice of appeal had expired.  Nothing in either the Complaint or the parties' briefing indicates that AMICO notified Custom that AMICO was going to pay the judgment.  AMICO alleges in its Complaint only that it paid the judgment "on behalf of Custom."  (Doc. 1, ¶ 16).

After paying the judgment, AMICO then filed the present action against Custom, asserting six counts.  Counts I through IV allege that the damages awarded in the Underlying Litigation were not covered by the AMICO Policy due to various provisions and exclusions in the policy.  Count V alleges that Custom has violated a condition precedent of the AMICO policy by not fully cooperating with the investigation of the claim in the Underlying Litigation and by failing to produce certain information that would have assisted AMICO in determining whether or not ADS's claims against Custom were covered under the AMICO Policy.  Finally, Count VI, pled in the alternative, seeks an apportionment of damages and a declaratory judgment defining which damages in the Underlying Litigation are covered, if any, by the AMICO Policy, and seeks reimbursement from Custom for any damages not covered by the AMICO Policy.

AMICO requests relief in the form of a declaratory judgment that the damages against Custom in the ADS action were not covered by the AMICO policy, that Custom's alleged breach of its duty to cooperate with AMICO during its investigation caused AMICO prejudice, that AMICO is excused from performance under the AMICO policy, and that AMICO is entitled to reimbursement from Custom in the amount of $482,891.26.  In the alternative, AMICO is seeking an order that it

5

was not obligated to pay damages claimed by Custom in connection with the Underlying Litigation which are found not to be covered by the AMICO Policy.

Custom filed the present Motion to Dismiss on November 21, 2005, seeking to dismiss AMICO's Complaint in its entirety.

## II.    ANALYSIS

### A.    Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), the Court may dismiss a claim for failure to state a claim upon which relief can be granted.  A motion to dismiss under Rule 12(b)(6) is directed solely at the complaint itself.  *Roth Steel Products v. Sharon Steel Corp.*, 705 F.2d 134, 155 (6th Cir. 1983) (citing *Sims v. Mercy Hospital of Monore*, 451  F.2d 171, 173 (6th Cir. 1971)).  When evaluating a complaint in light of a motion to dismiss, the Court must accept all of the plaintiff's allegations as true and resolve every doubt in the plaintiff's favor.  *Craighead v. E.F. Hutton & Co.*, 899 F.2d 485, 489 (6th Cir. 1990) (citing *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)).  A complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Id.* (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

### B.    Discussion

In its Motion to Dismiss, Custom argues that AMICO's payment of the judgment in the Underlying Litigation was a voluntary payment for which AMICO cannot seek reimbursement. Custom bases this assertion on the fact that AMICO never specifically reserved the right to be reimbursed for any <u>judgment</u> payments it made, but only reserved the right to seek reimbursement for <u>settlement</u> monies and defense costs incurred in defending uncovered claims or damages.  Absent

6

such a reservation, Custom contends, any payment by AMICO to satisfy the judgment is voluntary. Further, Custom contends that AMICO was under no obligation to pay the judgment when it did, which was prior to the expiration of Custom's opportunity to file a notice of appeal and before AMICO filed an action or claim in any court seeking to be relieved of that obligation.  Because AMICO's payment was voluntary, Custom argues that AMICO is not entitled even to seek a determination of whether the claims in the Underlying Litigation are covered by its policy and, therefore, that its Complaint fails to state a claim upon which relief can be granted.

In response, AMICO argues that the two reservation of rights letters it sent to Custom were sufficient to reserve its right to seek reimbursement for the costs it paid to satisfy the judgment against Custom.  In addition, AMICO argues that its payment was not voluntary because insurance companies are obligated to act in good faith in handling claims from insureds, and, therefore, AMICO had a duty to make the payment.  Finally, AMICO contends that, due to Custom's refusal to supply AMICO with necessary information, AMICO had no choice but to pay the entire judgment because it was not in a position to determine which, if any, of the underlying claims were covered by its policy.

As an initial matter, it is important to note that AMICO does not base its alleged right to reimbursement on the insurance policy itself.  Although the entire Policy has not been submitted to the Court, the portions of the Policy that were filed with the Complaint (7 of 12 pages) do not reference the right to seek reimbursement, and the remainder of the policy presumably is silent as to the question of reimbursement.  AMICO does not indicate otherwise either in the Complaint or in its Response.  Any contractual right to seek reimbursement of judgment payments made by AMICO, therefore, must arise solely from the reservation of rights letters it sent to Custom after the

7

commencement of the Underlying Litigation.

### 1. Right to reimbursement

The central question before the Court is whether AMICO reserved its right to seek reimbursement for the judgment payment.[4]  First, the Court must consider whether an insurer may ever reserve its right to reimbursement for judgment monies paid based on a unilateral reservation of rights letter.  If so, the Court must then consider whether AMICO's actions in this case were sufficient to reserve its rights to seek reimbursement.

### a. Applicable Law

The parties do not cite, and the Court has been unable to find, any cases in which an insurer has sought reimbursement from an insured after paying a judgment to a third party.[5]  The Court agrees with Custom's statement that the lack of case law with the same facts is likely due to the fact

---

[4]  Although much of Custom's argument relates to whether AMICO's payment was voluntary, that argument is based on Custom's assertion that, absent an adequate reservation of rights, any payment made by AMICO must be voluntary.  Custom's argument that AMICO acted as a volunteer, therefore, is premised on the assertion that AMICO did not adequately reserve its rights.  Accordingly, the Court must first determine whether AMICO reserved its right to reimbursement for the judgment monies it paid.

[5]  AMICO cites *Permanent General Ins. Co. v. Bedwell*, 111 Ohio Misc.2d 8 (Hamilton County Mun. Court 2001), in which an Ohio municipal court held that an insured was required to reimburse an insurer for a settlement payment the insurer made under a reservation of rights. *Bedwell*, however, is not on point.  First, it involved a settlement payment rather than a judgment payment.  In addition, the insurer in that case made the settlement payment pursuant to Ohio's Financial Responsibility Act, which requires insurers to "provide [financial] protection to the motoring public" and cover claims ten days after an insured's policy has been terminated. *Id.* at 12. Ohio Revised Code section 4509.55(B) applies to such payments by insurers and provides that "[a]ny motor-vehicle liability policy may provide that the insured shall reimburse the insurance carrier for any payment the insurance carrier would not have been obligated to make under the terms of the policy except for such sections."  Because the insurer in *Bedwell* was permitted by statute to include a reimbursement provision in its policy, that case is not applicable to the present issue of the right to seek reimbursement.

that an insurer does not typically take this course of conduct - i.e., pay a judgment when it asserts there is uncertainty about the policy's coverage.  More typically, after an entry of judgment, an insurer either admits coverage and pays the judgment, institutes an action for declaratory judgment of non-coverage, denies coverage and risks losing a declaratory judgment action brought by the insured or a direct action by the judgment creditor, or approaches the insured and negotiates an agreement regarding payment of the judgment.

Because there is a lack of precedent directly on point, the Court looks to analogous cases in which insurers have sought reimbursement for the payment of defense costs (as opposed to the payment of judgments) based on a unilateral reservation of rights.  The Court first reviews the relevant case law regarding the right to seek reimbursement for defense costs in Ohio and other states before considering whether that law can be applied to the case at bar.[6]

### b. Reservation of right to seek reimbursement for defense costs

In general, there is a split among states as to whether an insurer may <u>ever</u> seek reimbursement for defense costs based on a unilateral reservation of rights letter.  Most states permit insurers to seek reimbursement pursuant to a unilateral reservation of rights based on the theory that the reservation creates an implied-in-fact contract when it is accepted by the insured without objection.  *See Colony Ins. Co. v. G & E Tires & Servs., Inc.*, 777 So.2d 1034 (Fla. App. 2000); *Knapp v. Commonwealth Land Title Ins. Co.*, 932 F.Supp. 1169 (D. Minn. 1996).  A minority of states, including Illinois and

---

[6] Although it appears that AMICO also paid defense costs to Custom and specifically reserved the right, in its November 6, 2004 letter, to seek reimbursement for defense costs, AMICO does not ask for reimbursement for those defense costs. AMICO only seeks reimbursement for satisfying the judgment against Custom.  Apparently, AMICO concedes that its broader obligation to provide defense costs required those payments and that it cannot in good faith seek to recoup them.

9

Pennsylvania, do not permit such reimbursement.  The Illinois Supreme Court, for example, while recognizing the majority view, has held that an insurer's rights against an insured are found only in the insurance policy between the parties, and that, "absent such a provision in the policy, . . . an insurer cannot later attempt to amend the policy by including the right to reimbursement in its reservation of rights letter."  *General Agents Ins. Co. Ov Am., Inc. v. Midwest Sporting Goods Co.*, 828 N.E.2d 1092, 1101-04 (Ill. 2005).

Recently, the Sixth Circuit was faced with this issue (i.e., whether insurers may seek reimbursement for defense costs pursuant to a unilateral reservation of rights) and noted that the Ohio Supreme Court had not yet addressed it.  *See United Nat'l Ins. Co. v. SST Fitness Corp.*, 309 F.3d 914, 917 (6th Cir. 2002).  The Sixth Circuit, therefore, was required to predict what the Ohio Supreme Court would decide.   In that case, SST Fitness Corporation (SST) purchased liability insurance from United National Insurance Company (United National).  *Id.* at 916.  When SST was later sued for patent and trademark infringement, United National paid SST's defense costs but, prior to paying the costs, sent a letter to SST stating, "United National reserves the right to recoup from SST any defense costs and fees paid subject to this reservation letter on the basis that no duty to defend now exists or has existed with regard to the tendered suit."  *Id*.  United National paid $116,706 in defense costs to SST's counsel, and SST accepted payment without objecting to the reservation of rights.  Later, United National won a declaratory judgment against SST that it owed no duty to defend or indemnify in the underlying action, and then sought reimbursement for the defense costs paid.  The question presented was whether United National was entitled to the reimbursement of those costs based on its reservation of rights.

In deciding that question, the Sixth Circuit predicted that the Ohio Supreme Court would

follow the majority rule that "an insurer is entitled to reimbursement for defense costs when the insurer did not have a duty to defend any of the asserted claims where the insurer: (1) timely and explicitly reserves its right to recoup the costs; and (2) provides specific and adequate notice of the possibility of reimbursement." *Id.* at 919.  The Court determined that this rule was consistent with Ohio contract law, finding that an implied-in-fact contract is formed in circumstances where an insurer sends a reservation of rights letter and the insured "accept[s] the defense costs with the reservation of rights under conditions disallowing an inference that [the insurer] acted gratuitously." *Id.* at 920.  Accordingly, the Court held that United National was entitled to reimbursement.

Based on *United National*, therefore, it appears that there are <u>some</u> circumstances in which an insurer can seek reimbursement for <u>defense</u> costs pursuant to an implied contract theory.  Those circumstances require a timely and explicit reservation of rights and specific and adequate notice to the insured.  In the present case, the Court must decide whether the framework of *United National*, which involved reimbursement for defense costs, can be extended to an insured's efforts to seek reimbursement for judgment payments and, if so, whether AMICO's reservation of rights was adequate under that framework to support its request in this case.  Resolving those questions first requires an examination of the difference between the duty to defend and the duty to indemnify.

### c.  Duty to defend and duty to indemnify

Under Ohio law, "an insurer's duty to indemnify is separate and distinct from its duty to defend," *M/G Transport Servs. v. Water Quality Ins. Syndicate*, 234 F.3d 974, 979 (6th Cir. 2000), and Ohio courts have held that the duty to defend may be broader than the duty to indemnify.  *See, e.g., Emp. Ins. of Wausau v. Amcast Indus. Corp.*, 709 N.E.2d 932, 937 (2d Dist. Montgomery County 1998) ("We agree with [defendant's] assertion that an insurer's duty to defend may be

11

broader than its duty to indemnify."). This is because the duty to defend arises when a complaint contains claims that are even "arguably covered" by the insurance policy, whereas a duty to indemnify is based only on actual liability. *City of Sharonville v. Am. Employers Ins. Co.*, 846 N.E.2d 833, 837 (Ohio 2006) ("[A]n insurer has an absolute duty to defend an action when the complaint contains an allegation in any one of its claims that could arguably be covered by the insurance policy, even in part and even if the allegations are groundless, false or fraudulent."); *Chemstress Consulting Co. v. Cincinnati Ins. Co.*, 715 N.E.2d 208, 212 (Ohio Ct. App. 1998) ("The duty to indemnify is based on whether there is, in fact, liability under the policy."). It is entirely possible, therefore, that an insurer may have a duty to defend at the outset of the litigation (where the claims are only "arguably covered") but no duty to indemnify if facts that exclude coverage are revealed during the litigation.

Because the duty to defend may be broader than the duty to indemnify, certain practical considerations distinguish the two obligations. First, because an insured can establish the existence of a duty to defend more easily (because it exists even in arguable circumstances), a refusal to provide defense costs is more likely to subject an insurer to a bad faith claim. In other words, it is less likely that an insurer has a reasonable justification to refuse to pay defense costs than it is that an insurer has a reasonable basis to deny a claim for indemnification. Although, as AMICO correctly points out, both the duty to defend and the duty to indemnify require the insurer to act in good faith, s*ee Hoskins v. Aetna Life Ins. Co.*, 6 Ohio St.3d 272 (1983), the difference in the scope of the obligations exposes an insurer to greater risk when it refuses to pay defense costs.

Second, an insurer has a greater incentive to provide defense costs than it does to pay a judgment because of the stage in litigation in which the duties arise. An erroneous or wrongful refusal to defend an action causes an insurer to lose the right to control the litigation, the right to prohibit

12

a reasonable settlement by the insured, and the right to require the insured to comply with any conditions precedent to the policy. *See generally* OHIO JUR. INSURANCE § 1098. An unjustified refusal to defend, therefore, subjects the insured to the "risks that an inept or lackadaisical defense of the underlying action may expose it to if it turns out there is a duty to indemnify." *Terra Nova Ins. Co., Ltd. v. 900 Bar, Inc.*, 887 F.2d 1213, 1219 (3rd Cir. 1989). The decision of whether to pay a judgment does not involve the same concerns.[7]

Finally, there is another difference between the payment of defense costs and payment of a judgment that relates specifically to the issue before the Court. That difference is that an insured's <u>acceptance</u> of defense costs from an insurer, which is a fundamental component in the finding that a reservation of rights letter creates an implied contract, is much more apparent in the context of defense costs than it is in the context of a judgment payment. An insured who receives a defense provided by an insurer is necessarily aware that a defense is being provided. On the other hand, when an insurer pays a judgment, an insured does not affirmatively accept the benefit of the payment (because it goes directly to the third party) and, as in this case, is not always aware when or if a payment occurs. It is, therefore, much less appropriate to find the creation of an implied contract in those circumstances, which are the circumstances that are presently before the Court.

Taking into account these distinctions between defense costs and judgment payments, as well

---

[7] AMICO argues that, by paying the judgment, it stopped interest from accruing on an unpaid judgment and prevented a probable garnishment action against Custom. Though it has some initial appeal, this argument is, ultimately, too facile. AMICO could have filed a notice of appeal from the judgment, with an appellate bond, thereby staying Custom's payment obligations, or otherwise sought a stay pending resolution of any dispute over the Policy it may have had with Custom. AMICO's claimed need to act so quickly to pay the judgment rings particularly hollow, moreover, when it had years while the underlying action was pending to initiate a Declaratory Judgment Action with respect to the Policy, and even had some five months after the court's initial judgment against Custom to address its coverage concerns.

13

as the different considerations that apply to an insurer's obligations in connection with those payments, the Court concludes that it is unlikely that the Ohio courts would extend the framework of *United National* to the present case.  States that permit an insurer to seek reimbursement for <u>defense</u> costs based on a unilateral reservation of rights already provide a liberal interpretation of an insurer's rights, an interpretation that a significant number of states has rejected.  *See, e.g., General Agents Ins. Co. Ov Am., Inc. v. Midwest Sporting Goods Co.*, 828 N.E.2d 1092, 1101-04 (Ill. 2005); *Terra Nova Ins. Co., Ltd. v. 900 Bar, Inc.*, 887 F.2d 1213, 1219 (3rd Cir. 1989) (applying Pennyslvania law); *Shoshone First Bank v. Pacific Employers Ins. Co.*, 2 P.3d 510 (Wyo. 2000); *Texas Ass'n of Counties Government Risk Management Pool v. Matagorda County*, 52 S.W.3d 128 (Tex. 2000).  The Court does not believe that this broad interpretation of insurer's rights would be extended by the Ohio courts even further to encompass an insurer's right to seek reimbursement for the payment of a judgment, based solely on a unilateral reservation of rights.  Given the different circumstances surrounding the payment of judgments, including the fact that an insurer has more reasonable options at the stage of the litigation when judgment is entered, the Court finds that the law, as articulated in *United National*, would not be extended to the facts of the present case.

The Court's conclusion, however, does not mean that an insurer has no recourse when faced with a judgment by a third party against one of its insured.  As mentioned above, an insured has several options, including the ability to negotiate a new contract with the insured to determine which party will pay the judgment, when it will be paid, and whether the insured will have the right to seek reimbursement if it is later determined that the underlying claims were not covered by the insurance policy.  Alternatively, an insurer can file an action seeking a declaration of non-coverage or deny coverage (if it has a good faith basis to do so) and defend an action brought either by the insured or

14

the judgment creditor.  The course of conduct that AMICO choose – simply to pay the judgment without notifying Custom and before expiration of the time to file an appeal – does not give it the right to later rethink the wisdom of that action.

Finally, as a matter of policy, AMICO argues that it "should not be penalized for fulfilling its duty of good faith by paying the judgment . . ." (Doc. 17-1 at p. 8).  Accepting AMICO's argument, however, would create a system in which an insurance company can make a unilateral decision to pay a judgment, then seek repayment from the insured at any later time, leaving an insured unsure of its liability for an indeterminate period.  The Court finds that AMICO's position, if accepted, creates a much less attractive policy and cannot be encouraged.

### d.  Even under *United National* AMICO cannot seek reimbursement

Alternatively, even if the Ohio courts were to conclude that, in some circumstances an insurer may reserve its right to seek reimbursement for judgment payments made without prior approval of the insured, the Court nonetheless concludes that AMICO's reservation of rights letters were not sufficient to reserve its rights in the circumstances of this case.  AMICO points to the following language in the May 11, 2005 letter as establishing its right to seek reimbursement for any judgment monies paid:

> AMICO hereby asserts its full and complete reservation of rights concerning these claims.  Nothing contained herein, nor any further actions taken by AMICO, should be construed as a waiver of any rights or defenses, whether or not stated herein, which AMICO may possess under its policies and applicable law.  It should be understood that any actions taken by AMICO, its agents, representatives or attorneys do not constitute and are not intended as a waiver of any rights or defenses available to AMICO whether or not stated herein, that may be available now or at any point in time, including withdrawal of the defense and/or filing of a declaratory judgment action.

(Doc. 1, Ex. F at p. 8).  In addition, the following paragraph from the November 6, 2004 letter,

15

although not referenced by AMICO in its Response, is relevant to the Court's consideration:

> This [letter] will reiterate that American Motorists Insurance Company (AMICO) reserves its rights to seek reimbursement for Custom for any settlement monies AMICO pays in settlement of uncovered claims and for defense cost incurred defending uncovered claims or damages.

(Doc. 1, Ex. C at p. 7).

Under the *United National* framework, the question for the Court is whether the language in those two letters is sufficiently explicit and provides specific enough notice to Custom to give AMICO the right to seek reimbursement of the $482,289.26 it paid to satisfy the judgment against Custom. The Court finds that, even if *United National* applies, AMICO's reservation of rights letters were not sufficient to give it that right.

Pursuant to *United National*, an insurer must (1) timely and explicitly reserve its right to recoup costs, and (2) provide specific and adequate notice of the possibility of reimbursement. *United Nat'l Ins. Co.*, 309 F.3d at 919. AMICO's reservations do not meet those standards. The broad reservation contained in the May 11, 2005 letter is too vague to provide Custom with specific notice that AMICO intended to later seek reimbursement for a judgment payment (particularly one made while the option to file an appeal from that judgment was still available to Custom), and the reservation of rights in the November 6, 2004 letter to seek reimbursement for settlement monies unambiguously applies only to settlement monies. Neither reservation, therefore, entitles AMICO to the right it now claims. Undergirding the Court's conclusion is the principle under Ohio law that an insurance contract prepared by the insurer should be liberally construed in favor of the insured. *See Taulbee v. Travelers Cos.*, 537 N.E.2d 670, 673 (Ohio App. 1987) ("Where a contract is prepared by the insurer and includes language which is doubtful, vague, or ambiguous, it is axiomatic

16

that the language is to be construed in favor of the insured and strictly against the insurer."). That principle should apply with even more strength where, as here, the alleged rights purportedly were created in an implied contract pursuant to a unilateral reservation of rights.

First, AMICO's May 11, 2005 letter expressly stated that AMICO does not waive any rights which it may possess "under its policies and under applicable law." AMICO has not cited any language in its policies that gives it the right to seek reimbursement for judgment monies paid, nor has it cited any applicable law that would provide such a right. One cannot waive rights one does not possess, nor can one reserve rights that do not exist. AMICO's "full and complete reservation of rights" is not a reservation of rights it already possessed; rather, it is an attempted creation of new rights pursuant to an implied contract. Leaving aside the question of whether Custom accepted the terms of the letter by its failure to object, AMICO must specifically and explicitly detail its rights in order to later claim them. The broad reservation contained in the May 11, 2005 letter is not sufficient to reserve the specific right to seek reimbursement for judgment payments. Indeed, the May 11, 2005 letter does not include the word "reimbursement." At best, the broad reservation of rights is a mere reiteration of the rights contained in AMICO's Policy. At worst, it is too vague and should be construed against AMICO as not providing any substantive rights.

Further, although the November 6, 2004 letter does mention reimbursement, AMICO specifically reserved its rights to seek reimbursement for <u>settlement</u> monies paid, not <u>judgment</u> monies.[8] Because the alleged right to reimbursement purportedly was created by implication from

---

[8] While the letter did inform Custom that it, and not AMICO, would be obligated to pay any uncovered judgment, it did not refer to or even contemplate the possibility that AMICO would pay a judgment it did not believe it was obligated to pay and then seek to recoup those amounts, and certainly <u>did not</u> expressly reserve any right to do so.

17

a unilateral reservation, and because an insurance contract should be construed in favor of the insured, the Court construes this reservation of rights strictly as applying only to reimbursement for settlement monies.  In addition, AMICO sent the November 6, 2004 letter before judgment was entered and seven months prior to the actual judgment payment, which could not possibly give Custom notice that AMICO would take the broad leap of paying the judgment against Custom without either notifying Custom or waiting until the time for appealing the judgment expired.  Neither letter, therefore, entitles AMICO to seek reimbursement for the judgment payment.[9]

### 2.      Breach of the Cooperation Provision

Count V of the Complaint alleges that Custom breached a condition precedent to coverage under the Policy when it failed to cooperate with AMICO in its investigation of the claims involved in the Underlying Litigation.  AMICO alleges that Custom breached Section III.2.c(3) of the Policy, which provides that:

2.c.    You and any other involved Insured must:

*      *      *      *

(3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit" . . .

AMICO alleges that it requested information from Custom to assist it in determining whether any damages claimed by Custom were indeed covered by the Policy.  In its letter sent on May 11, 2005, AMICO made a request for specific, itemized information required "to complete its analysis

---

[9]  Because the Court finds that AMICO has no right to seek reimbursement for judgment monies paid, it does not address the question of whether AMICO acted as a "volunteer" when it paid the judgment.  Custom argues that the question answers itself – if AMICO did not reserve its right to seek reimbursement, then it necessarily acted as a volunteer.  This Court does not decide that question, however, because the answer would not change the outcome of this opinion.

18

of this action." (Doc. 1, Ex. F).  AMICO alleges that those requests were ignored in breach of the "cooperation provision" quoted above, which is a condition precedent to the Policy.

In response, Custom argues that the "lack of cooperation" issue is merely a red herring. Custom contends that it provided AMICO with any and all information requested by AMICO during the two and one-half years while the Underlying Litigation was pending, during which time AMICO-selected counsel defended Custom.[10]  Custom characterizes AMICO's belated request for information, which came after the January 10, 2005 finding of liability against Custom, as part of a "unilateral effort to begin its campaign to avoid coverage for the damage award issued by the trial court." (Doc. 19 at p. 7).

The Court concludes that AMICO cannot assert a claim for breach of the cooperation provision because it waived the ability to do so when it paid the judgment on Custom's behalf.  The Underlying Litigation was pending from August 28, 2002, when ADS filed suit against Custom, through January 10, 2005, when the trial court found Custom liable to ADS.  While AMICO alleges in its Complaint that it requested information from Custom "on several occasions," (Complaint at ¶ 48), in its Response to Custom's motion to dismiss it concedes that it did not actually make a request for information until May 11, 2005.[11]  At that point, AMICO had provided a defense to Custom for two and one-half years without ever referring to the need for more information or the cooperation

---

[10]  The Court, of course, may not consider Custom's assertions that it fully cooperated with AMICO during the litigation, as such consideration is not appropriate at this stage of the pleadings.  It repeats that argument here only to provide context to the discussion.

[11]  The May 11, 2005 letter references a "request for information" made in a letter dated December 17, 2005.  That letter was neither attached to nor quoted in AMICO's Complaint nor was it provided in connection with AMICO's Response to the current motion.  The Court assumes that AMICO would have provided the December 17, 2005 letter to the Court if it would have supported its contentions in its Complaint; it apparently does not do so.

provisions of the Policy.  Thereafter, rather than rely on the absence of cooperation as grounds to deny coverage and refuse to pay the judgment, AMICO <u>paid</u> the judgment unilaterally.  The Court is at a loss to understand how AMICO could now rely on an alleged failure of a condition <u>precedent</u> to coverage to now seek <u>reimbursement</u> for coverage it chose to provide.  The concept is simply counter-intuitive.

It bears repeating that AMICO had several options available to it when judgment was entered against Custom.  Any one of those options would have allowed for resolution of its claimed coverage dispute in an orderly and logical fashion.  The action that AMICO chose – to pay the judgment unilaterally and then resort to this Court – is neither orderly nor logical.

### 3.    Unjust Enrichment

Finally, AMICO repeatedly argues in its Response that it has asserted a claim for unjust enrichment that must survive Custom's Motion to Dismiss.  AMICO, however, does not cite to any paragraph in its Complaint to support this claim.  Custom contends that no such claim has been pled, and that, in fact, such a claim would be barred because there is an express contract that governs the relationship between these parties.

After carefully reviewing the Complaint, the Court does not interpret AMICO's Complaint as including a claim for unjust enrichment.  AMICO has alleged six counts.  Each count references AMICO's Policy, including Count VI, which was pled in the alternative for an apportionment of damages based on the Court's possible determination that only some claims were covered by AMICO's Policy.  AMICO cannot use an opposition brief as a vehicle to amend its Complaint.  The Court concludes, therefore, that, even if it could assert such a claim (which is doubtful under Ohio law), AMICO has not done so.

### III.    CONCLUSION

For the reasons outlined above, Customs' Motion to Dismiss is **GRANTED**, and this case

is **DISMISSED**.

**IT IS SO ORDERED.**

s/Kathleen M. O'Malley
**KATHLEEN McDONALD O'MALLEY**
**UNITED STATES DISTRICT JUDGE**

**Dated: August 23, 2006**